# **EXHIBIT 1**

## **SUMMONS + COMPLAINT**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

-------------------------------------------------------------- X

EXYTE U.S., INC.

               Plaintiff,

        -against-

ATHENEX, INC. and IMMUNITYBIO, INC.

               Defendants.

-------------------------------------------------------------- X

Index No.
Date Purchased:  October 5, 2022

**SUMMONS**

Plaintiff designates
Erie County as the place of trial.

The basis of venue is:
The Project is located in Erie County and this venue is designated pursuant to a forum selection clause in the parties' contract

**TO THE ABOVE NAMED DEFENDANTS**:

      **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the complaint of the Plaintiff in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys, Peckar & Abramson P.C., within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

October 5, 2022
New York, New York

Respectfully submitted,

      _/s/Bruce D. Meller_____
Bruce D. Meller, Esq.
Peter E. Moran, Esq.
PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas,
10th Floor

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

#4816780v2

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 3 of 28

New York, New York 10019
Tel.  212.382.0909
Fax.  212.382.3456
Bmeller@pecklaw.com
Pmoran@pecklaw.com

Attorneys for Plaintiff,
Exyte U.S., Inc.

TO:

Athenex, Inc.
c/o New York Secretary of State
Office of the New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

ImmunityBio, Inc.
c/o New York Secretary of State
Office of the New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

#4816780v2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

------------------------------------------------------------- X

EXYTE U.S., INC.

                  Plaintiff,

       -against-

ATHENEX, INC. and  IMMUNITYBIO,
INC.

             Defendants.

------------------------------------------------------------- X

Index No.: _____

**COMPLAINT**

       Plaintiff, Exyte U.S., Inc. ("Exyte"), complaining of the defendants, by its attorneys, Peckar & Abramson, P.C., alleges as follows:

       **<u>The Parties and Venue</u>**

       1.      At all times hereinafter mentioned Exyte was and is a corporation duly organized and existing pursuant to the laws of the State of Delaware and is duly authorized to conduct business in New York, having a place of business at 201 Fuller Road, Suite 401, Albany, NY 12203.  Exyte is engaged in the design, engineering, construction and delivery of facilities for high-tech industries, such as those in the semiconductor, battery, pharmaceutical, biotechnology, and data center fields.

       2.      Upon information and belief, at all times hereinafter mentioned, the defendant, Athenex, Inc. ("Athenex"), was and is a corporation duly organized and existing pursuant to the laws of the State of Delaware and is duly authorized to conduct business in New York, having a place of business at Conventus Building, 1001 Main Street, Suite 600, Buffalo, NY 14203.  Athenex is or was engaged in the business of producing pharmaceuticals.

LAW OFFICES

**Peckar &**
**Abramson**

A Professional Corporation

1

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 5 of 28

3.      Upon information and belief, at all times hereinafter mentioned, the defendant, ImmunityBio, Inc. ("ImmunityBio"), was and is a corporation duly organized and existing pursuant to the laws of the State of Delaware and is duly authorized to conduct business in New York, having a place of business at 3805 Lake Shore Drive East, Dunkirk, NY 14048. ImmunityBio is or was engaged in the business of producing pharmaceuticals.

4.      The agreement between Exyte and Athenex contains provisions requiring disputes to be decided by litigation in a court of competent jurisdiction located in Erie County, New York.

### FACTS COMMON TO ALL CAUSES OF ACTION

**The Dunkirk Plant Project**

5.      Upon information and belief, in or about May 2015 and subsequent thereto, Athenex entered into a series of agreements wherein it obtained the rights to develop a project to construct a new greenfield manufacturing plant and related improvements at a site located at 3805 Lake Shore Drive East, Dunkirk, NY 14048 ("the Project" or "The Dunkirk Plant Project").

6.      In or about September 2017, Athenex entered into a Capital Grant Agreement with the New York State Urban Development Corporation d/b/a Empire State Development Corporation ("ESDC") wherein, among other things, ESDC agreed to fund the design and construction of the Project in an amount up to $200 million.

7.      Athenex previously received up to $25 million in grant money from ESDC to build its headquarters in Buffalo, with the understanding that any money remaining from the $25 million grant was to also be invested in the Dunkirk Plant Project.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

8.      Pursuant to the Capital Grant Agreement, Athenex committed to spending $1.52 billion on operational expenses in its first 10-year lease term at the Project facility, an additional $1.5 billion on operational expenses if the term of the lease is extended for a second 10-year term, and to hire 450 new permanent employees within the first 5 years of the Project's operation.

9.      The Project is to include an approximately 320,000 square foot facility for manufacturing pharmaceuticals with warehousing, laboratories, office space, central utilities, and site improvements to be utilized as part of Athenex's business of producing oncological products.

**The Design-Build Agreement**

10.      In furtherance of the Project, by written agreement dated December 29, 2017, Athenex entered into a Design-Build Agreement ("D/B Agreement") with M+W U.S., Inc. ("M+W"), whereby, in exchange for compensation, M+W would be the "design-builder" of the Project, to design and construct the Project in accordance with certain Criteria and User Requirements Specifications developed by Athenex and as later modified.

11.      M+W and Athenex entered into performance of the D/B Agreement.

12.      Subsequent to the execution of the D/B Agreement, M+W underwent a name change and is now known as Exyte.

13.      Pursuant to the terms of D/B Agreement, among other things, Athenex is the Project Owner and bore all responsibilities of the Owner under that agreement for the Project.

14.      The D/B Agreement was later amended, which included the parties entering into a Guaranteed Maximum Price ("GMP") for the overall contract sum of $212,594,806, subject

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

3

to certain terms and conditions, and to change all references in the documents from M+W to Exyte.

15.     As to billing matters, the D/B Agreement states that Exyte is to issue progress invoices for its services on a monthly basis and that Exyte would be compensated for its work as payments come due.

16.     Among other terms, the D/B Agreement provides that Owner is to issue a Certificate of Payment to Exyte within seven days of its receipt of Exyte's monthly Applications for Payment, wherein the Owner is to indicate the amount it believes is properly due and to notify Exyte in writing of the Owner's reasons for withholding certification of all or part of the payment sought (if any).

17.     Final payment is to be made by the Owner not later than 30 days after Exyte has fully performed the contract and satisfied the conditions for final payment listed in the D/B Agreement.

18.     Under the D/B Agreement Exyte is also to be compensated for a portion of the savings it generated in completing the Project for less than the GMP, to wit, Section A.1.4.3.1 of the Third Amendment provides:

> Design-Builder is entitled to shared savings based on the final Contract cost including Fee ("Final Cost"), being delivered under $212,594,806. If the Final Cost of the Project is less than $212,594,806, then Design-Builder shall be entitled to the first $150,000 (one-hundred and fifty thousand dollars) of the total savings. Thereafter, Design-Builder shall be compensated in a shared savings value, which shall equal Forty Percent (40%) of the difference between the Final Cost and $ 212,444,806 (GMP - $150,000 = $212,444,806).

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

4

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 8 of 28

19.     Accordingly, if savings were realized, Exyte was entitled to a payment of $150,000 plus 40% of the remaining savings generated if it constructed the Project for less than the GMP of $212,594,806.

20.     The D/B Agreement provides, among other things, that the contract is binding upon the parties' partners, successors, assigns and legal representatives.

21.     It further states, in Section 15.2, that neither party is permitted to assign the contract without the written consent of the other and that if either party attempts to make an assignment without consent, that party shall nevertheless remain legally responsible for all obligations under the D/B Agreement.

22.     An exception to Section 15.2 exists in the D/B Agreement that permits Athenex to assign the contract without Exyte's consent, but only to Athenex's lender providing construction financing for the Project and only if the lender assumes all of Athenex's rights and obligations under the Design-Build Documents (a term defined in the D/B Agreement).

**Athenex's Sale to ImmunityBio and ImmunityBio's Assumption of its Payment Obligations**

23.     Unbeknownst and without notice to Exyte, in or about 2021, Athenex began discussions with ImmunityBio to purchase or take assignment of some or all of Athenex's assets, including the Project and the D/B Agreement.

24.     On or about January 7, 2022, Athenex and ImmunityBio entered into a Purchase Agreement ("Purchase Agreement").  Athenex is defined as the "Seller," ImmunityBio as the "Buyer," and the Project as "the Manufacturing Facility" in the Purchase Agreement, amongst other terms.

25.     The Purchase Agreement contains a broad assignment clause and states, in relevant part, that "Seller desires to sell, assign, and transfer to Buyer, and Buyer desires to

LAW OFFICES

**Peckar &
Abramson**

A Professional Corporation

5

acquire from Seller, certain assets and rights of Seller, <u>and Buyer is willing to assume certain liabilities and obligations of Seller, relating to the Manufacturing Facility</u>, upon the terms and subject to the conditions hereinafter set forth." (emphasis added).

26.    As part of the transaction, Athenex was to "shall sell, transfer, assign, convey and deliver" to ImmunityBio certain delineated assets and properties (defined as the "Purchased Assets"), which include virtually all aspects of the Project, amongst other things, namely:

(a)    Athenex's leasehold interest and development rights in the Project;

(b)    All of Athenex's property, inventory, supplies, and fixtures located at the Manufacturing Facility;

(c)    All of Athenex's rights under certain contracts defined as the "Assigned Contracts";

(d)    All of Athenex's rights relating to deposits and prepayments with respect to purchase orders or other contracts included in the Assigned Contracts; and

(e)    All warranties (express and implied) that continue in effect with respect to the Manufacturing Facility or any Purchased Asset (including, without limitation, warranties provided for under any Assigned Contract), to the extent assignable.

27.    That ImmunityBio was assuming all of Athenex's rights and responsibilities with respect to the Project, including Athenex's payment obligations to Exyte, is further underscored by a multitude of provisions transferring control of the Project and the Manufacturing Facility to ImmunityBio.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

6

28. Despite being indebted to Exyte, Athenex made a representation in the Purchase Agreement to ImmunityBio that all contracts at the Project had been paid in full, to wit: "All contractors who performed and completed work at the Leased Real Property pursuant to the AIA Agreement have been paid in full, except as set forth on Schedule 5.4(e)."

29. Exyte neither has access to the final schedules and other attachments to the Purchase Agreement nor has Athenex or ImmunityBio disclosed same to Exyte.

30. By express word and conduct, ImmunityBio has represented to Exyte that the D/B Agreement is among the "Assigned Contracts" that ImmunityBio received and assumed from Athenex.

31. ImmunityBio is the tenant and owner of the Project.

32. ImmunityBio is occupying the Manufacturing Facility and has commenced its business operations out of same.

33. ImmunityBio has sent correspondence to Exyte demanding it correct certain alleged "deficiencies" in the Project, threatening to undertake alleged corrective work at Exyte's expense, and has otherwise conducted and represented itself as the Owner of the Project.

34. Simultaneously, despite due demand, Athenex and ImmunityBio have refused to render payment to Exyte for amounts owed, including those amounts due for shared savings, retainage and Exyte's final payment.

35. ImmunityBio has instead tried to "pass the buck" and evade its payment obligations by directing Exyte to look solely to Athenex for the amounts owed and has claimed that it did not assume Athenex's payment obligations and other responsibilities under the D/B Agreement, but only selectively purchased "the benefits" of the D/B Agreement.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

7

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 11 of 28

36.     ImmunityBio's position is contrary to law, equity, and the terms of the Purchase Agreement.

37.     Notably, under the Purchase Agreement, ImmunityBio agreed to assume and perform the liabilities of Athenex under the Assigned Contracts that arose after the closing date of the transaction.

38.     More specifically, Section 2.4(a) of the Purchase Agreement provides:

> Subject to the terms and conditions of this Agreement, at the Closing, Buyer shall assume and agree to perform, pursuant to the Bill of Sale and the Contract Assignments, as applicable, only the Liabilities of Seller under the Assigned Contracts arising, accruing, or required to be performed after the Closing Date (collectively, the "Assumed Liabilities").

39.     The closing contemplated by the Purchase Agreement occurred on or about February 14, 2022.

40.     At a minimum, Exyte invoiced Athenex for the shared savings it is owed in April 2022.

41.     Because Athenex and ImmunityBio concealed their discussions from Exyte until after the Purchase Agreement was executed, Exyte was unaware of the assignment to ImmunityBio.

42.     Regardless of whether Exyte consents to the assignment of the D/B Agreement, the Purchase Agreement nonetheless states that ImmunityBio is responsible for the costs associated with performing any of Athenex's rights and obligations under same.

43.     ImmunityBio's assumption of Athenex's obligations is further underscored in Section 2.3 of the Purchase Agreement where, if Athenex is unable to obtain a third party's consent to the assignment of a contract to ImmunityBio, then the parties are to negotiate an

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

8

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 12 of 28

arrangement whereby ImmunityBio obtains the contract rights and assumes the corresponding liabilities and obligations under such "Nonassignable Asset."

44.     Further, at law, assignments are impermissible if they materially change the duties of the non-assigning party (i.e., Exyte), increase the burdens or risks imposed on the non-assigning party, impair the non-assigning party's chance of obtaining return performance, and/or reduce the value of the contract to the non-assigning party.

45.     Delegations of contractual duties are generally permissible so long as the performance of those duties by the delegate (ImmunityBio) does not vary materially from the performance owed by the delegating party (Athenex).

46.     Where the delegate (ImmunityBio) fails to properly perform, the law imposes liability on the delegating party (Athenex) to ensure that performance is properly rendered to the non-assigning party (Exyte).

47.     The transaction consummated between Athenex and ImmunityBio under the Purchase Agreement, and particularly their subsequent acts and omissions in dealing with Exyte, have destroyed, diminished, hindered, and frustrated Exyte's contractual rights and its enjoyment of same.

48.     More specifically, Athenex and ImmunityBio have structured a transaction whereby performance is unilaterally demanded of Exyte under the D/B Agreement to a previously unknown party, but no return performance from Athenex and/or ImmunityBio will be given in accordance with the agreed upon terms of the D/B Agreement, most notably those concerning Exyte's right to payment of its final invoice, retainage, and shared savings.

49.     ImmunityBio has utterly refused to render payment and stated that it will not do so *even if* Exyte undertakes to correct the allegedly nonconforming work cited by ImmunityBio.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

9

### The Payment Dispute

50.     Exyte is owed, the sums of at least $ 1,075,138.29 under the D/B Agreement for its final payment including retainage which is being held by Athenex and/or ImmunityBio.

51.     Exyte fully performed all of its work and properly invoiced Athenex for these sums by virtue of periodic Payment Applications, including Payment Application No. 38 dated April 30, 2021 and submitted in May, 2021.

52.     Athenex and/or ImmunityBio failed to issue a Certificate of Payment in accordance with the D/B Agreement in response to these Payment Applications and invoiced sums.

53.     Athenex and/or ImmunityBio failed to issue a writing, in conformance with the D/B Agreement, setting forth any basis for them to withhold payments to Exyte for the amounts invoiced whether in whole or in part.

54.     Athenex and/or ImmunityBio failed to render payment in accordance with the provisions of the D/B Agreement for these sums, including those regarding the timing of payment, such that these sums remain due and owing.

55.     Exyte completed the Project for less than the GMP and, by its detailed accounting, brought the Project in at a savings of at least $18,507,276.47, after excluding the $150,000 bonus payment designated for Pike from its savings calculation:

| | |
|---|---|
| Available Project Savings | $18,190,877.47 |
| Additional Savings from Contingency Usage | $466,399.00 |
| Pike Bonus | ($150,000.00) |
| **TOTAL Project Cost Savings** | **$18,507,276.47** |

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

10

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 14 of 28

56.     On or about April 11, 2022, Exyte submitted a Payment Application No. 39 for the 40% portion of the shared savings Owner is obligated to pay it under the contract, namely $7,402,910.59 (i.e., $18,507,276.47 x .40 = $7,402,910.59).

57.     To date, despite due demand, Athenex and/or ImmunityBio has refused to certify the amount invoiced as shared savings or rendered payment to Exyte for same in contravention of the terms of the D/B Agreement, such that the sum of $7,402,910.59 for shared savings remains due and owing.

58.     Exyte has performed all of the terms and conditions of the D/B Agreement on its part to be performed, except insofar as any of those terms and conditions were prevented, waived or excused by Athenex and/or ImmunityBio.

59.     Thus, to date, despite due demand, Athenex and/or ImmunityBio has refused to certify or pay the amounts invoiced to Exyte in contravention of the terms of the D/B Agreement, such that sums in excess of $8,478,048.88 remain due and owing.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
**(Breach of Contract by Athenex)**

60.     Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth at length herein.

61.     Athenex has a duty to abide by the terms of the D/B Agreement, including but not limited to those provisions regarding payment to Exyte and those placing limits upon how the D/B Agreement may be assigned.

62.     Athenex has materially breached the D/B Agreement in multiple instances which include, but are not limited to, the following:

LAW OFFICES

**Peckar &
Abramson**

A Professional Corporation

11

     a)     Failing to timely and properly certify payments due to Exyte following receipt of Exyte's payment applications;

     b)     Failing to timely and properly set forth in writing the reasons why sums invoiced by Exyte are being withheld;

     c)     Failing to timely and properly render payment of invoices submitted by Exyte on the Project;

     d)     Failing to make payment to Exyte for its final payment, retainage, and shared savings which are due under the terms of the parties' contract;

     e)     Failing to disclose to Exyte its negotiations with ImmunityBio to assume the D/B Agreement and ownership/control of the Project;

     f)     Assigning the D/B Agreement to ImmunityBio without obtaining Exyte's consent;

     g)     Creating an assignment to ImmunityBio that materially changes Exyte's duties, increases the burdens or risks imposed upon Exyte, impairs Exyte's chances of obtaining return performance under the contract, and/or reduces the value of the contract to Exyte;

     h)     Delegating duties to ImmunityBio which materially vary from the duties required of Athenex to Exyte under the contract;

     i)     Failing to guarantee ImmunityBio's proper performance to Exyte of the duties Athenex assigned and/or transferred to ImmunityBio;

     j)     Failing to undertake its payment obligations once ImmunityBio repudiated its obligations to render payment to Exyte;

     k)     Ratifying and/or acquiescing in ImmunityBio's demands that Exyte perform alleged corrective work at the Project and in ImmunityBio's refusal to render payment to Exyte for moneys owed; and/or

     l)     Other breaches as supported by the facts alleged in and incorporated into this Complaint.

63.     Exyte has performed all of the terms and conditions of the D/B Agreement on its part to be performed, except insofar as any of those terms and conditions were prevented, waived or excused by Athenex and/or ImmunityBio.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

12

64. By reason of the foregoing breaches, Exyte has been damaged in sums equal to at least $ 8,478,048.88, for what it has invoiced for its final payment, retainage, and its portion of the shared savings, exclusive of interest and other sums due and owing.

65. Despite due demand, Athenex and/or ImmunityBio have failed and refused to pay Exyte for the damages incurred and Athenex is liable therefor.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Anticipatory Breach and/or Breach of Contract by ImmunityBio)

66. Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth at length herein.

67. By virtue of the Purchase Agreement and by operation of law, ImmunityBio has been assigned the D/B Agreement and assumed all of Athenex's rights and obligations to Exyte under same.

68. By virtue of its representations and subsequent acts, omissions, and conduct, ImmunityBio has held itself out as the Owner of the Project and conducted itself as if it has been assigned the D/B Agreement, most notably by occupying the Manufacturing Facility, demanding Exyte undertake alleged corrective work at the Project, and threatening to perform said work at Exyte's expense should Exyte fail to act.

69. The D/B Agreement is a bilateral contract with mutual obligations existing between the parties, including but not limited to those requiring Exyte to accomplish the design and construction of the Project in exchange for Athenex/ImmunityBio compensating Exyte for its work and other contractual rights and entitlements.

70. ImmunityBio is equally responsible for each of the material breaches of the D/B Agreement set forth above, including those in the First Cause of Action, and is obligated to

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

13

render payment to Exyte for its final payment, retainage, and shared savings which are due under the terms of the parties' contract.

71.     ImmunityBio has expressly refused to perform or  render payment to Exyte for amounts owed, including those amounts due for shared savings, retainage and Exyte's final payment in amounts that exceed $8,478,048.88.

72.     ImmunityBio has repudiated its payment obligations by directing Exyte to look solely to Athenex for the amounts owed and has claimed that it did not assume Athenex's payment obligations and other responsibilities under the D/B Agreement, but only selectively purchased "the benefits" of the D/B Agreement.

73.     Exyte has not received all of the consideration due it under the contract, namely, the amounts invoiced for shared savings, retainage and final payment continue to be due and owing under the terms of the D/B Agreement, despite Exyte's demand for same from ImmunityBio.

74.     Exyte has performed all of the terms and conditions of the D/B Agreement on its part to be performed, except insofar as any of those terms and conditions were prevented, waived or excused by Athenex and/or ImmunityBio.

75.     By reason of the foregoing breaches, Exyte has been damaged in sums equal to at least $ 8,478,048.88, for what it has invoiced for its final payment, retainage, and its portion of the shared savings, exclusive of interest and other sums due and owing.

76.     Despite due demand, Athenex and/or ImmunityBio have failed and refused to pay Exyte for the damages incurred and ImmunityBio is liable therefor.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

14

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith by Athenex and ImmunityBio)

77.     Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 76 of this Complaint with the same force and effect as if fully set forth at length herein.

78.     There is a covenant of good faith and fair dealing implied by law into every contract, including the D/B Agreement, such that one party cannot act to destroy or injure the rights of the other party to receive the fruits of the contract.

79.     Exyte, Athenex, and ImmunityBio (by virtue of, *inter alia*, the assignment and Purchase Agreement) are parties to the D/B Agreement.

80.     By virtue of the transaction consummated between Athenex and ImmunityBio under the Purchase Agreement, and particularly by their subsequent representations, acts and omissions in dealing with Exyte, Athenex and ImmunityBio have destroyed, diminished, hindered, and frustrated Exyte's contractual rights and its enjoyment of same.

81.     Athenex and ImmunityBio have structured a transaction whereby performance is unilaterally demanded of Exyte under the D/B Agreement to a previously unknown party, but no return performance from Athenex and/or ImmunityBio will be given in accordance with the agreed upon terms of the D/B Agreement, most notably those concerning Exyte's right to payment of its final invoice, retainage, and shared savings.

82.     Athenex and ImmunityBio have utterly refused to perform and render payment, with ImmunityBio stating that they will not do so *even if* Exyte undertakes to correct the allegedly nonconforming work they cite.

83.     Athenex and ImmunityBio have created an assignment that materially changes Exyte's duties, increases the burdens or risks imposed upon Exyte, impairs Exyte's chances of

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

15

obtaining return performance under the contract, and/or reduces the value of the contract to Exyte.

84.      Their assignment has also delegated duties to ImmunityBio which materially vary from the duties required of Athenex to Exyte under the contract.

85.      The acts and omissions of Athenex and ImmunityBio, jointly and severally, are depriving Exyte of the fruits of its contract, preventing performance of the D/B Agreement, and are withholding Exyte's receipt of its contractual benefits, including payment.

86.      By virtue of its detailed transaction with Athenex and the express terms of the Purchase Agreement, ImmunityBio was aware of the existence of the D/B Agreement.

87.      By virtue of its detailed transaction with Athenex and the express terms of the Purchase Agreement, ImmunityBio was also aware of Athenex's and Exyte's rights and obligations toward each other under the D/B Agreement, including for payment.

88.      Due to this history and specific knowledge, defendants were aware of the affects their transaction would have on the performance of the D/B Agreement and Exyte's ability to receive payment for its work and, thus, they have acted deliberately, or in wanton disregard of Exyte's rights, in breach of the implied covenant of good faith and fair dealing.

89.      Exyte has performed all of the terms and conditions of the D/B Agreement on its part to be performed, except insofar as any of those terms and conditions were prevented, waived or excused by Athenex and/or ImmunityBio.

90.      By reason of the foregoing breaches, Exyte has been damaged in sums equal to at least $ 8,478,048.88, for what it has invoiced for its final payment, retainage, and its portion of the shared savings, exclusive of interest and other sums due and owing.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

16

91.     Despite due demand, Athenex and/or ImmunityBio have failed and refused to pay Exyte for the damages incurred and Athenex and ImmunityBio are jointly and severally liable therefor.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Account Stated as to Athenex and ImmunityBio)**

92.     Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 91 of this Complaint with the same force and effect as if fully set forth at length herein.

93.     Exyte has duly tendered invoices and requests for payment to Athenex and ImmunityBio for the work, labor, services and materials that it provided to the Project, and Athenex and ImmunityBio have not objected to said invoices and requests for payment.

94.     There exists an agreement between the parties that the amounts invoiced on the account for prior work performed will be paid.

95.     As a result, an account has been stated as between the parties for the sum of $8,478,048.88, of which no part has been paid.

96.     To date, Athenex and ImmunityBio have failed to pay the aforementioned sum despite due demand.

97.     As a result, Exyte seeks damages on its account with Athenex and ImmunityBio, jointly and severally, in the amount of at least $8,478,048.88, exclusive of interest and other sums due and owing, for which Athenex and ImmunityBio are liable.

LAW OFFICES

**Peckar &
Abramson**
A Professional Corporation

17

Case 1:24-cv-00242-EAW   Document 1-1   Filed 03/20/24   Page 21 of 28

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Violation Of Prompt Payment Act by Athenex and ImmunityBio)**

98.     Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 97 of this Complaint with the same force and effect as if fully set forth at length herein.

99.     Under the D/B Agreement, Athenex bears the responsibilities of the Owner of the Project.

100.    By virtue of the Purchase Agreement and the acts further alleged above, ImmunityBio is the Project Owner, has assumed Athenex's payment obligations under the D/B Agreement, and is jointly and severally liable for same.

101.    Pursuant to Section 756-a of the New York General Business Law, the owner of the Project was obligated to review and approve Exyte's applications for payment within 12 business days of receipt, and unless a written rejection and detailed basis for withholding payment was provided to Exyte within that timeframe, the owner was obligated to pay Exyte's requisitions in full within seven (7) business days thereafter, unless modified by the parties' agreement.

102.    Exyte submitted to the owner itemized monthly applications for payment of the work it performed during that period, including monthly invoices for its final payment, retainage, and its portion of the shared savings.

103.    Exyte never received any notices of rejection or withholding from Athenex/ImmunityBio in response to its open requisitions, indicating that the amounts being invoiced were inaccurate or that there was any reason justifying withholding of any money sought in its requisitions.

LAW OFFICES

**Peckar &
Abramson**

A Professional Corporation

18

104.    Nevertheless, Athenex and/or ImmunityBio have failed and/or refused to issue full payments to Exyte on a timely basis as provided by Section 756-a of the New York General Business Law and the parties' contract, for which the amount of at least $8,478,048.88, remains currently due, owing, and payable.

105.    By reason of the foregoing, Athenex and/or ImmunityBio are jointly and severally liable to Exyte in the amount of at least $8,478,048.88, plus interest at the statutory rate of 1% per month under Section 756-b(1)(b) of the New York General Business Law, or 1.5% per month or for any other applicable rate provided by the D/B Agreement, and/or for attorneys' fees and costs of suit.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (*In the Alternative*, Unjust Enrichment as to Athenex and ImmunityBio)

106.    Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 105 of this Complaint with the same force and effect as if fully set forth at length herein.

107.    Exyte performed valuable design and construction services for the Project, with the expectation that payment would be received for those services.

108.    Defendants accepted those services, have benefitted and are enriched by the receipts of those goods and services from Exyte and their property has been improved.

109.    Athenex and ImmunityBio have received and unjustly retained the benefit of approximately $8,478,048.88, being the fair and reasonable value of the design and construction services provided to the Project for which they have not compensated Exyte.

110.    *In the alternative* and to the extent a valid contract does not exist between Exyte and one or more of the defendants, it is against equity and conscience to permit Athenex and

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

19

ImmunityBio to be unjustly enriched if they were permitted to retain the value of said services without compensating Exyte.

111.    As a result of the foregoing, Exyte has suffered damages and Athenex and ImmunityBio are jointly and severally liable therefor.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(*In the Alternative*, Tortious Interference With Contract by ImmunityBio)**

112.    Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth at length herein.

113.    The D/B Agreement is a contract to which Exyte has the legal right and ability to enforce.

114.    By virtue of its detailed transaction with Athenex and the express terms of the Purchase Agreement, ImmunityBio was aware of the existence of the D/B Agreement and of Athenex's and Exyte's rights and obligations toward each other under the D/B Agreement, including for payment.

115.    *In the alternative*, to the extent ImmunityBio is not a party to the D/B Agreement (by virtue of an assignment or otherwise) or found to be legally responsible for the performance of Athenex's obligations under same, then ImmunityBio, by virtue of its representations,  acts and omissions as alleged above, has interfered and intentionally procured, without justification or excuse, Athenex's breach of the D/B Agreement, including but not limited to its participation in an assignment obtained without consent which has denied Exyte's ability to receive payment for its services under said agreement.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

20

116. As a result of the foregoing, Exyte has suffered damages of at least $8,478,048.88 and ImmunityBio is liable therefor.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
#### (*In the Alternative*, Breach of Contract and Specific Performance)

117. Exyte repeats and re-alleges each and every allegation contained in Paragraphs 1 through 116 of this Complaint with the same force and effect as if fully set forth at length herein.

118. The Purchase Agreement is a valid and binding contract.

119. The Purchase Agreement contains specific, detailed provisions concerning how the D/B Agreement is to be handled by Athenex and ImmunityBio as a result of the transaction, particularly as to past and future obligations owed to Exyte under same after the closing occurs.

120. Regardless of whether Exyte consents to the assignment of the D/B Agreement, the Purchase Agreement states, under Section 7.2 and elsewhere, that ImmunityBio is responsible for the costs associated with performing any of Athenex's rights and obligations under the D/B Agreement.

121. The Purchase Agreement also contains general provisions addressing how any "Nonassignable Asset" is to be handled by Athenex and ImmunityBio, including as to how past and future obligations are to be addressed under contracts which are not assigned to ImmunityBio due to consent not being obtained by the non-assigning party.

122. Under the Purchase Agreement, if Athenex is unable to obtain a third party's consent to the assignment of a contract to ImmunityBio, then the parties are to negotiate an arrangement whereby ImmunityBio obtains the contract rights and assumes the corresponding liabilities and obligations under such "Nonassignable Asset" or under which ImmunityBio

21

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

assumes and agrees to pay Athenex's obligations for contracts that are being enforced for its <u>benefit.</u>

123. These provisions, among others, as expressly worded and/or as evident from the surrounding circumstances were intended for the direct and immediate benefit of Exyte, such that Exyte is an intended and direct beneficiary entitled to sue for damages due to the breach of these obligations and/or to seek specific performance to compel Athenex and ImmunityBio to fulfill the promised performance.

124. In material breach of the provisions of the Purchase Agreement, Athenex and ImmunityBio have failed to assume the payment obligations under the D/B Agreement, to compensate Exyte for the sums invoiced, and/or to otherwise negotiate an arrangement whereby ImmunityBio obtains the contract rights and assumes the corresponding liabilities and obligations under the D/B Agreement or by which ImmunityBio assumes and agrees to pay Athenex's obligations under the D/B Agreement that Athenex is purportedly enforcing on its behalf.

125. Given Athenex and ImmunityBio's recalcitrance, as the aggrieved party, Exyte is the only party that can meaningfully recover for breach of these provisions and/or it is otherwise clear from the express words of the Purchase Agreement and the surrounding circumstances that Athenex and ImmunityBio intended to permit Exyte to enforce same and recover for any benefits lost.

126. Given the representations made by Athenex and ImmunityBio that ImmunityBio has only assumed rights under the D/B Agreement without any of the obligations, it is evident that neither intends to enforce these provisions of the Purchase Agreement and to protect Exyte's rights to receive the benefit of same.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

22

127. By reason of the foregoing breaches, Exyte has been damaged in sums equal to at least $ 8,478,048.88, for what it has invoiced for its final payment, retainage, and its portion of the shared savings, exclusive of interest and other sums due and owing.

128. Despite due demand, Athenex and/or ImmunityBio have failed and refused to pay Exyte for the damages incurred and defendants are jointly and severally liable therefor.

**WHEREFORE**, Plaintiff, Exyte U.S., Inc. respectfully requests that judgment be entered in its favor and against Defendants Athenex, Inc. and ImmunityBio, Inc., as follows:

(a) on its First Cause of Action against Athenex, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

(b) on its Second Cause of Action against ImmunityBio, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

(c) on its Third Cause of Action as against the defendants jointly and severally, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

(d) on its Fourth Cause of Action as against the defendants jointly and severally, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

23

(e)     on its Fifth Cause of Action as against the defendants jointly and severally, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate statutory or contract interest thereon;

(f)     on its Sixth Cause of Action as against the defendants jointly and severally, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

(g)     on its Seventh Cause of Action as against ImmunityBio, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon, and for punitive damages in an amount to be established at trial, but which is currently estimated to be in excess of $10,000,000;

(h)     on its Eighth Cause of Action as against defendants, jointly and severally, in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon, and/or compelling defendants to specifically perform the Purchase Agreement and establish financial commitments to compensate Exyte for sums owed under the D/B Agreement in an amount to be established at trial, but which is currently estimated to be in excess of $8,478,048.88, with appropriate interest thereon;

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

24

together with its costs, disbursements, punitive and statutory damages, and attorneys' fees related to this action and such other and further relief as this Court deems just and proper.

Ocotber 5, 2022
New York, New York

Respectfully submitted,

*/s/Bruce D. Meller*
Bruce D. Meller, Esq.
Peter E. Moran, Esq.
**PECKAR & ABRAMSON, P.C.**
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
Telephone: (212) 382-0909
Facsimile: (212) 382-3456
Bmeller@pecklaw.com
Pmoran@pecklaw.com

Attorneys for Plaintiff,
Exyte U.S., Inc.

#4810490v5

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

25