UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EXYTE U.S., INC.,

              Plaintiff,                    **DECISION AND ORDER**

      v.                                          1:24-CV-00242 EAW

ATHENEX, INC. and
IMMUNITYBIO, INC.,

              Defendants.
_____

# INTRODUCTION

On October 5, 2022, Exyte U.S., Inc. ("Exyte") sued Athenex, Inc. ("Athenex") and ImmunityBio, Inc. ("ImmunityBio") in New York State Supreme Court, Erie County, for breach of contract and related claims in connection with the design and build of a pharmaceutical manufacturing facility in Dunkirk, New York ("Civil Action"). (Dkt. 1-1). In May 2023, Athenex and five affiliated companies ("Debtors" or "Athenex")[1] filed for protection from their creditors under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). (Dkt. 3-1).

Pending before the Court is Athenex's motion to transfer this action to the Bankruptcy Court pursuant to 28 U.S.C. § 1412 (Dkt. 2) and ImmunityBio's cross-motion to remand (Dkt. 19). For the following reasons, the Court grants the motion to transfer and denies the motion to remand.

---

[1]    "Athenex" also refers to the Athenex Liquidating Trust, Athenex's successor-in-interest. (Dkt. 3-8 at 2).

## FACTUAL BACKGROUND

The following facts are taken from Notice of Removal (Dkt. 1), the certification of John P. Madden (Dkt. 22-1), and the supplemental certification of Brett S. Moore (Dkt. 22-4), as well as the exhibits the parties submitted.

### A. State court proceedings

Exyte is a company incorporated in Delaware with a place of business in Albany, New York. (Dkt. 1-1 at ¶ 1). Exyte designs and constructs facilities for high-tech industries. (*Id.* at ¶ 1). Athenex is a company engaged in the production of pharmaceuticals, incorporated in Delaware with a place of business in Buffalo, New York. (*Id.* at ¶ 2). In May 2015, "Athenex entered into a series of agreements wherein it obtained the rights to develop a project to construct a new greenfield manufacturing plant and related improvements at a site" in Dunkirk, New York ("Project"). (*Id*. at ¶ 5). In September 2017, "Athenex entered into a Capital Grant Agreement with the New York State Urban Development Corporation d/b/a Empire State Development Corporation ("ESDC") wherein, among other things, ESDC agreed to fund the design and construction of the Project in an amount up to $200 million." (*Id*. at ¶ 6). In turn, Athenex committed to hiring 450 new permanent employees within the first five years, and to spending over one billion dollars at the plant. (*Id.* at ¶ 8).

In December 2017, Exyte[2] entered into a design-build agreement ("D/B Agreement") with Athenex to design and construct the Project. (*Id*. at ¶ 10). In relevant

---

[2] At the time it entered into the D/B Agreement, Exyte was known as M+W U.S., Inc. (Dkt. 1 at ¶¶ 10-12).

part, the D/B Agreement provides that it is governed by New York law, and that "[a]ny disputes arising under [the D/B Agreement] shall be brought in a state or federal court of competent jurisdiction located in Erie County, New York." (Dkt. 1-10 § 15.1). The D/B Agreement required Athenex to pay Exyte for its services, along with a cut of any savings Exyte achieved in completing the Project for less than the guaranteed minimum price. (Dkt. 1-1 at ¶¶ 14-18). With an exception not applicable here, the D/B Agreement was not assignable without the written consent of the other party. (Dkt. 1-10 at § 15.2).

Exyte billed Athenex $1,075,138.29 for its work on the Project in May 2021. (Dkt. 1-1 at ¶¶ 50-51). It also billed $7,402.910.59 for its portion of the shared savings on the project in April 2021. (*Id.* at ¶ 56). Athenex paid neither amount. (*Id.* at ¶¶ 52-54; 57).

In January 2022, Athenex entered into a purchase agreement with ImmunityBio in which ImmunityBio bought the rights to the Project, along with certain other assets and rights of Athenex related to the Project. (Dkt. 1-12 at 7). As relevant here, ImmunityBio assumed "only the Liabilities of Seller under the Assigned Contracts arising, accruing, or required to be performed after the Closing Date," of the Athenex-ImmunityBio agreement,[3] with Athenex retaining all other liabilities. (Dkt. 1-12 at 14 § 2.4).

On October 5, 2022, Exyte brought the Civil Action, seeking damages for (1) breach of the D/B Agreement, as against Athenex; (2) anticipatory breach and/or breach of the D/B Agreement, as well as tortious interference with contract, as against ImmunityBio; and (3) breach of the implied covenant of good faith and fair dealing; account stated;

---

[3] The closing date of the agreement between Athenex and ImmunityBio was February 14, 2022. (Dkt. 1-1 at ¶ 39).

violation of the Prompt Payment Act; unjust enrichment; and breach of contract and specific performance, as against both parties. (Dkt. 1-1). In December 2022, Athenex filed an answer that included counterclaims against Exyte, while ImmunityBio moved to dismiss the complaint. (Dkt. 1-6; Dkt. 1-7). In January 2023, Athenex filed a motion to dismiss a number of the claims against it. (Dkt. 1-24). Both motions remain undecided, and the state court proceedings are stayed. (Dkt. 1-72).

### B. Bankruptcy proceedings

In May 2023, the Debtors filed for protection from their creditors under Chapter 11 of the U.S. Bankruptcy Code in the Bankruptcy Court. (Dkt. 3-1). On May 25, 2023, ImmunityBio filed proof of claim No. 10016 in the Athenex bankruptcy proceedings. (Dkt. 3-4). On July 20, 2023, Exyte filed proof of claim No. 10317 in the Athenex bankruptcy proceedings. (Dkt. 3-3).

The Bankruptcy Court confirmed a plan of liquidation ("Plan") for the Debtors on September 12, 2023. (Dkt. 3-6). In relevant part, the Plan established a liquidating trust, and appointed Emerald Capital Advisors as the liquidating trustee. (*Id.*; Dkt. 3-8). The Plan vests the liquidating trustee with the authority to "control, pursue, enforce, prosecute, monetize, and collect" upon all causes of action, including the Civil Action. (Dkt. 3-6 at 62). On February 7, 2024, the Bankruptcy Court extended the time to seek removal of the Civil Action through March 31, 2024. (Dkt. 3-9).

## PROCEDURAL BACKGROUND

Athenex removed the Civil Action to this Court on March 20, 2024. (Dkt. 1). On the same day, Athenex moved to transfer the Civil Action to the Bankruptcy Court. (Dkt. 2). On April 18, 2024, ImmunityBio filed a cross-motion to remand the Civil Action and opposed the motion to transfer. (Dkt. 19; Dkt. 20). On May 15, 2024, Athenex filed a reply and opposition to the cross-motion. (Dkt. 22). Exyte has taken no position on the pending motions.

## DISCUSSION

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." *Stahl v. Stahl*, No. 03 Civ. 0405 VM., 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003). Thus, the Court turns first to the remand motion.

### I. Motion to Remand

A cause of action before a state court may be removed by the defendant if "the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). A defendant's ability to remove an action "is strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *Amcat Glob., Inc. v. Yonaty*, 192 F. Supp. 3d 308, 311 (N.D.N.Y. 2016) (internal citations and quotation marks omitted). "[A]ll doubts should be resolved in favor of remand." *Id*. (citation omitted).

"Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) (quoting *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). Thus, "[a] district court must remand a case to state court if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (internal citation and quotation marks omitted). Additionally, a cause of action removed to federal court because of that cause of action's relation to a bankruptcy may be remanded "on any equitable ground." 28 U.S.C. § 1452(b).

Bankruptcy court jurisdiction over civil proceedings is limited to those proceedings "arising in a bankruptcy case or arising under the bankruptcy law (i.e., core proceedings), and proceedings that relate to a bankruptcy case (i.e., non-core proceedings)." *In re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016); *see* 28 U.S.C § 1334(b) (providing that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

ImmunityBio argues remand is required because this action is subject to mandatory abstention. (Dkt. 20 at 20-21). Section 1334(c)(2) governs mandatory abstention in bankruptcy cases:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing

such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). However, abstention is only mandatory for non-core matters. *S.G. Phillips Constructors, Inc. v. City of Burlington*, 45 F.3d 702, 708 (2d Cir. 1995); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002) ("[W]here a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable."). As explained below, this matter is a core proceeding. Thus, federal court jurisdiction is proper, and the case is not subject to mandatory abstention.

ImmunityBio makes no other arguments to support its cross-motion for remand.[4] Because the Court has subject matter jurisdiction and the action is not subject to mandatory abstention, the Court denies the motion to remand.

## II. Motion to Transfer

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[5] While the statute makes clear that it applies to proceedings "under" Title 11, there is a split between district courts as to whether it applies to a proceeding that "arises

---

[4] ImmunityBio makes a glancing reference to equitable remand by stating that "the Court could apply permissive abstention to the claims against Athenex." (Dkt. 20 at 21). To the extent that ImmunityBio is arguing equitable remand is required, the Court declines to consider this argument, which is not developed in ImmunityBio's memorandum of law. *See Sibley v. Watches*, 2022 WL 17090037, at * 1, n.1 (W.D.N.Y. 2022).

[5] ImmunityBio argues that this action is also not transferable pursuant to 28 U.S.C. § 1404. (Dkt. 20 at 18-19). As Athenex did not move for transfer under section 1404, and makes no argument that it has a right to transfer under that provision, the Court does not address the issue.

in" or is "related to" a bankruptcy case. *See Zohar CDO 2001-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 461-62 (S.D.N.Y. 2020).

"Actions arising under Title 11 include 'any matter under which a claim is made under a provision of [T]itle 11.'" *Id.* at 462 (quoting *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 511 (S.D.N.Y. 2015)) (alteration in original) (quotation marks omitted). "'[A]rising in' jurisdiction 'covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Tilton v. MBIA Inc.*, 620 B.R. 707, 713 (S.D.N.Y. 2020) (quoting *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010)). "'[R]elated to' jurisdiction provides bankruptcy jurisdiction to any action if the 'outcome might have any conceivable effect on the bankrupt estate.'" *Id.* (quoting *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).

There is a split among district courts as to when section 1412 is the appropriate statute to effectuate a transfer. "Some district court decisions . . . conclude that the language 'under title 11' in § 1412 includes cases 'related to' the bankruptcy proceeding." *Yellow Corp. v. Int'l Brotherhood of Teamsters*, 2023 WL 6645803, at *3 (D. Kan. Oct. 12, 2023) (citation omitted). "Another line of cases strictly construes § 1412, and finds that 'under title 11' means 'the main bankruptcy case itself, . . . [or] if it asserts causes of action that are created by the Bankruptcy Code itself.'" *Id.*

"A common practice in [the Southern District of New York] when determining whether a case may be transferred pursuant to Section 1412 is to look to whether the action is 'core' or 'non-core.'" *Zohar CDO 2001-1*, 620 B.R. at 462; *see also Argosy Cap. Group*

*III, L.v. Triangle Cap. Corp.*, 2019 WL 140730, at *4 (S.D.N.Y. 2019) ("transfer-of-venue motions for 'core' bankruptcy proceedings are governed by § 1412"); *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 248 (S.D.N.Y. 2017) ("Transfer of venue for core proceedings . . . is governed by 28 U.S.C. § 1412."). "[D]etermining whether an action is core does not run afoul of Section 1412's requirement that the action arise 'under title 11.'" *Zohar CDO 2001-1*, 620 B.R. at 462.

### A. Core versus non-core proceedings

Courts generally employ a two-step test to determine whether a state law contract action is a core proceeding: "(1) whether a contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (citation omitted). "A proceeding's nature can be core 'if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function.'" *Id.* (citation omitted).

Additionally, where "a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips*, 45 F.3d at 705.

> We believe that the determinative factor as to the bankruptcy court's jurisdiction in this case is that the City filed a proof of claim resulting in an adversary proceeding that involved the allowance or disallowance of claims against the estate. In so doing, the City necessarily became a party under the court's core jurisdiction. Because nothing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor, the bankruptcy court's determination whether to allow or disallow a claim is a core function.

*Id.* at 705 (internal quotation marks, citation and brackets omitted); *see also Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting [it]self to the bankruptcy court's equitable power.") (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58-59 (1989)); *Cent. Vt. Pub. Serv. V. Herbert*, 341 F.3d 186, 191-92 (2d Cir. 2003) ("Our cases have upheld bankruptcy jurisdiction in what would otherwise be non-core proceedings where the party opposing the finding of jurisdiction has filed a proof of claim. In doing so, we have relied on two theories: (1) the proof of claim transforms litigation into a core proceeding; and (2) by filing the proof of claim, the creditor consents to the bankruptcy court's broad equitable jurisdiction.").

ImmunityBio argues that *S.G. Phillips* does not control because it "did not consider transfer under section 1412 or whether a prepetition lawsuit by a non-debtor against another non-debtor was a 'core' proceeding." (Dkt. 20 at 15). This argument is unavailing: ImmunityBio does not cite to, and the Court's independent research did not find, cases that define core proceedings differently based on the context of the motion. *See, e.g.*, *Operr Grp., Inc. v. Operr Plaza, LLC*, 2024 WL 3106148, at * 1 (E.D.N.Y. June 24, 2024) ("This case arises out of the same set of operative facts that are already before the bankruptcy court pursuant to Plaintiff's proof of claim. . . . Accordingly, the Court finds that this case is a 'core' proceeding within the meaning of 28 U.S.C. § 157 and refers it to the ongoing bankruptcy proceeding on that basis." (citing *In re S.G. Phillips*, 45 F.3d at 706)); *Clean Air Car Serv. & Parking Corp. v. Clean Air Car Serv. & Parking Branch Two, LLC*, 2024 WL 3106220, at *1 (E.D.N.Y. June 24, 2024) ("Plaintiffs have filed a proof of claim in the

Clean Air 2 Debtor's bankruptcy proceeding based on the same allegations, as evidenced by their attachment of their summary judgment motion from this case to their proof of claim form. Accordingly, the Court finds that this case is a 'core' proceeding within the meaning of 28 U.S.C. § 157 and refers it to the ongoing bankruptcy proceeding on that basis."); *In re Iridium Operating LLC*, 285 B.R. 822, 831 (S.D.N.Y. 2002) ("It is with this understanding that the Second Circuit and courts in this district have consistently held adversary proceedings against a creditor that have traditionally been non-core to be core . . . due to the filing of a proof of claim or counterclaim of set-off/recoupment by that creditor.") (collecting cases).

The proof of claim filed by Exyte mirrors its claims in the Civil Action. Exyte's proof of claim seeks roughly $8.4 million relating to its work at the Project from either Athenex or ImmunityBio, and attached its state court complaint as the basis for its claims against the bankruptcy estate. (Dkt. 22-2). Athenex also filed counterclaims against Exyte, the resolution of which will directly affect the bankruptcy court's core functions. *See* 28 U.S.C. § 157(b)(2)(C) (defining core proceedings to include "counterclaims by the estate against persons filing claims against the estate"); *Ames Dept. Stores, Inc.*, 319 F. App'x 40, 41 (2d Cir. 2009) ("[T]his Court has concluded that a dispute which 'involve[s] an issue already before the bankruptcy court as part of its consideration of [one party's] claim against the estate' affects a core bankruptcy function.") (citation omitted); *In re Strathmore Grp.*, LLC, 522 B.R. 447, 454 (Bankr. E.D.N.Y. 2014) ("This Court has core jurisdiction to consider the state law issues in the . . . proceedings, because their resolution will form the basis of this Court's determination, under bankruptcy law, whether the Building is

property of a bankruptcy estate and whether [a creditor] has an allowed proof of claim against [the debtor].").

Similarly, ImmunityBio's proof of claim "arises from the Exyte Lawsuit and the construction defects at the Dunkirk Facility that Athenex and Exyte never remediated. lmmunityBio has the following claims and continues to suffer mounting ongoing damages due to Athenex's breach of the Purchase Agreement and fraud in hiding significant information regarding its dispute with Exyte." (Dkt. 22-3 at 5).  The "claims are based on breach of the Purchase Agreement as well as fraud for withholding information as to the nature, extent and duration of the construction defects and dispute."  (*Id.* at 6). ImmunityBio makes claims for Athenex to pay its defense costs in the Exyte litigation; to pay any liability incurred by ImmunityBio because of the lawsuit; and to indemnify ImmunityBio for the cost of remediating construction defects at the Project. (*Id.*).

Moreover, where, as here, the core and non-core claims are inextricably intertwined, and proofs of claim are filed, the non-core claims become core. *See In re Iridium Operating LLC*, 285 B.R. 822, 830 (S.D.N.Y. 2002) ("[A]ll of the claims in this adversary proceeding arise from the same operative facts as the core claims and [creditor's] proofs of claim, administrative expenses, and affirmative defenses. Thus, they are core claims."). ImmunityBio's interests are intertwined with Athenex's interest in defending against Exyte's claims, as those claims are based on a common set of facts and are brought against both ImmunityBio and Athenex.  Exyte's first cause of action alleges breach of contract against Athenex, while the second cause of action is against ImmunityBio for anticipatory breach and breach of that same contract. (Dkt. 1-1 at ¶¶ 60-76).  The third (breach of

implied covenant of good faith); fourth (account stated); fifth (violation of prompt payment act); sixth (unjust enrichment); and eighth (alternative, breach of contract and specific performance) causes of action are all alleged against both Athenex and ImmunityBio based on the same facts and seek the same damages. (*Id.* at ¶¶ 77-111; 117-128).

ImmunityBio's argument that the claims are not intertwined is entirely at odds with ImmunityBio's position in the Civil Action. When Exyte served ImmunityBio with discovery demands, ImmunityBio objected on the grounds that the automatic stay "applies to claims against ImmunityBio in light of Athenex's obligation to indemnify ImmunityBio." (Dkt. 22-8 at 3). ImmunityBio argued that "[w]hile, ordinarily, 'the bankruptcy filing by one defendant does not prevent a plaintiff from proceeding on causes of action against the non-bankrupt defendants, an exception is recognized where, as here, the bankrupt is obligated to indemnify a non-bankrupt defendant.' *Branham v. Loews Orpheum Theatre, Inc.*, 291 A.D.2d 356 (1st Dep't 2002) (affirming order marking action off calendar due to the bankruptcy of co-defendant)." (*Id.*). The state court granted the motion. (Dkt. 1-72). In a status report filed February 16, 2024, ImmunityBio urged the state court to continue the stay, noting:

> [A]ny determination of this action would risk inconsistent results with the determination of the parties' claims and defenses in the Bankruptcy Action. Specifically, Exyte's claims in the bankruptcy are identical to the claims it has asserted here; indeed, the complaint was attached as the basis of the bankruptcy claims. Likewise, ImmunityBio's claims in the bankruptcy both overlap with and are impacted by the state court action.

(Dkt. 22-9 at 4). ImmunityBio cannot argue in state court that its claims "overlap" with the claims in the bankruptcy proceeding, then turn around and argue in this Court that the

- 13 -

proceedings are separate and distinct. "Overlap with" and "intertwine" are synonyms, not antonyms.

For the reasons given above, the Court finds that the claims in the Civil Action are core proceedings that arise under Title 11.

### B.     Section 1412 factors

The decision to transfer venue is within a court's discretion based on an individualized case-by-case analysis of convenience and fairness. *See, e.g.*, *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (analogizing adjudication under 28 U.S.C. § 1404) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) ("The decision to transfer venue is within the discretion of the court, as evidenced by the use of the permissive 'may' in § 1412."). As the movant, Athenex bears the burden of establishing that transfer is warranted by a preponderance of the evidence. *See In re Manville Forest Prods.*, 896 F.2d at 1390. "Section 1412 is written in the disjunctive, meaning that each of the two prongs—'in the interest of justice' or 'for the convenience of the parties'— constitutes an independent ground for transferring venue." *In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012).

### 1. Interest of Justice

Athenex argued in its opening brief that the Civil Action should be transferred pursuant to the "in the interest of justice" prong. (Dkt. 2-1 at 9-11). ImmunityBio failed to respond to this argument, and thus concedes the point for the purpose of this motion. "It is well settled in this Circuit that '[a] plaintiff effectively concedes a defendant's arguments

by his failure to respond to them.'" *Lopez Canas v. Whitaker*, 2019 WL 2287789, at *5 (W.D.N.Y. May 29, 2019) (citations omitted). And the Court agrees that transfer in the interest of justice is appropriate.

> In analyzing the "interest of justice" prong under section 1412, courts consider:
>
> (i) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) whether the interests of judicial economy would be served by the transfer; (iii) whether the parties would be able to receive a fair trial in each of the possible venues; (iv) whether either forum has an interest in having the controversy decided within its borders; (v) whether the enforceability of any judgment would be affected by the transfer; and (vi) whether the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. at 672.

"[T]he district in which the underlying bankruptcy is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *See In re Manville Forest Prods.*, 896 F.2d at 1391 (internal citations and quotation omitted). Athenex represents that the claims involved in the Civil Action are the two largest claims in the bankruptcy proceeding, representing roughly 30 percent of the unsecured claims pool. (Dkt. 22-1 at ¶ 5). And as detailed above, the claims in the Civil Action mirror and overlap those set out in the proofs of claim, such that transfer of this action will promote efficient administration of the bankruptcy estate. The first two factors, then, strongly favor transfer.

The forum's interest in deciding the controversy tips slightly against transfer, as New York is where the parties each have a presence and the location of the Project. However, the Civil Action presents no novel questions of New York law that would benefit from decision by a New York jurist.

Both the fair trial and enforceability of judgment factors are neutral. Nothing in the record indicates that the parties will not receive a fair trial in either court, or that the enforceability of a judgment would be affected by transfer.

The final factor, plaintiff's choice of forum, also favors transfer. "Although a plaintiff's choice of forum is normally given substantial weight, it is well-established that the existence of a related action pending in the transferee court weighs heavily towards transfer." *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-CV-3474 SAS, 2015 WL 5257003, at *7 (S.D.N.Y. Sept. 9, 2015) (internal quotation marks and citations omitted). And where, as here, "a proceeding is core, the public interest in centralizing bankruptcy proceedings always outweighs the public and private interests in enforcing a forum-selection clause. . . ." *Rescap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 268 (S.D.N.Y. 2014); *see also In re Iridium Operating LLC,* 285 B.R. 822, 837 (S.D.N.Y. 2002) ("[A]lthough there is a strong public policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core."); *Argosy*, 2019 WL 140730, at * 7 ("policy toward enforcement of forum-selection clauses is 'not so strong' as to mandate enforcement in the face of . . . countervailing public interests in centralizing bankruptcy proceedings, judicial economy, and overall justice").

The Court finds that on balance, the factors favor transfer in the interest of justice.

### 2. Convenience of the parties

While Athenex need only show transfer is appropriate for the "in the interest of justice," the Court finds transfer is also appropriate for the "convenience of the parties." In assessing whether transfer "for the convenience of the parties" would be an appropriate exercise of discretion, courts consider: "(1) the plaintiff's choice of forum; (2) the locus of operative facts; (3) convenience factors, such as the location of parties, witnesses, and evidence; (4) familiarity of the court with the applicable law; and (5) interests of justice, including trial efficiency." *Credit Suisse AG*, 2015 WL 5257003, at *7.

ImmunityBio relies on the forum selection clauses in the agreements between the parties, but forum selection clauses are generally not enforceable in a core proceeding because public policy strongly favors hearing all core proceedings in the bankruptcy court. *See In re Iridium Operating LLC*, 285 B.R. at 837. And Exyte implicitly abandoned its interest in choosing the forum when it submitted no opposition to either removal or the motion to transfer.

ImmunityBio argues that "New York has a strong interest in adjudicating a case that involves a New York facility . . . New York-based witnesses, and New York State government funds." (Dkt. 20 at 18). This factor weighs slightly against transfer. As to the familiarity of the court with the applicable law, there is no reason to think that the Bankruptcy Court cannot decide what is, at bottom, a breach of contract case. ImmunityBio points to no novel issue of New York law that would be beyond the Bankruptcy Court's ken.

Finally, it would be more efficient to litigate the proofs of claim and the Civil Action in one forum. Litigating all claims in one forum avoids inconsistent results, with the added benefit of moving forward the Civil Action, which has been stayed since July 2023.

For these reasons, the Court finds this transfer for convenience of the parties appropriate.

## CONCLUSION

For the reasons set forth above, the motion to transfer (Dkt. 2) is granted, and the cross-motion to remand (Dkt. 19) is denied. The Clerk of Court is directed to transfer this case to the United States District Court for the Southern District of Texas, for referral to the United States Bankruptcy Court for the Southern District of Texas.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        March 7, 2025
              Rochester, New York